UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:14-CR-99-JHM-CHL

UNITED STATES OF AMERICA,                                    Plaintiff,

v.

JOHN W. SMITH, et al.,                                    Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

This case is set for trial by jury before the United States Magistrate Judge on February 17, 2016. The final pretrial conference is set for February 12, 2016. Before the Court are a number of motions in limine filed by the parties. In the interest of efficiency and consistency, the Court will address all pending motions in limine in this memorandum opinion and order.

<u>Background</u>

A brief summary of the factual allegations underlying this case will help to put the parties' motions in limine in context. This section is provided for background purposes only and does not constitute findings of fact or an acceptance by the Court of either party's view of any disputed fact. Defendant John W. Smith ("Smith") has declined to provide to the Court a written factual theory of his case. (*See* DN 212, Defendant's Trial Memorandum, at 2.) The United States represents that it "reached out to defense counsel to determine which facts were disputed and undisputed," and "[c]ounsel for [Smith] stated that all facts were disputed." (DN 211, Government's Pretrial Memorandum, at 1-2.)

Bluegrass Challenge Academy ("BCA") is a voluntary program for 16 to 18-year-olds who are deemed at risk of dropping out of or have already dropped out of high school. Participants may earn high school credits or prepare for the GED exam. BCA is located on the

Fort Knox military base, within the special and maritime jurisdiction of the United States.  BCA includes a 22-week residential program during which the students, who are known as "cadets" for purposes of the program, are supervised by staff members, known as "cadre."  The school is a quasi-military setting and participants are required to adhere to strict rules with respect to their behavior and daily schedule.

From approximately June 2003 to August 2013, Smith was employed as the Director of BCA.  From approximately January 2013 to August 2013, Stephen Miller ("Miller") was employed by BCA as a supervisory cadre member for female cadets.  Smith was Miller's supervisor.  According to the United States, in early February 2013, a 17-year-old female cadet with the initials "K.B." and referred to as "Jane Doe #4" in the superseding information filed against Miller (DN 111), was doing school work in a computer lab when Miller sat down next to her and pressed his leg against hers.  Later, according to the United States, Miller stood behind Jane Doe #4 (K.B.) and rubbed his clothed penis against her clothed shoulder.

Also in early February 2013, the United States alleges, while in Miller's office, a 17-year-old female cadet, referred to as "Jane Doe #1" in the superseding indictment filed against all defendants (DN 84), requested assistance affixing an armband to her uniform.  While assisting her, Miller allegedly touched Jane Doe #1's breast.  When Jane Doe #1 moved her arm, Miller allegedly grabbed her hand and pressed her palm against his clothed penis.

The United States alleges that Jane Doe #1 and Jane Doe #4 (K.B.) informed several BCA staff members of Miller's actions.  BCA conducted two mediation sessions, at which Jane Doe #1 and Jane Doe #4 (K.B.) were – separately –  required to confront Miller with their allegations.  According to the United States, at the end of one of Jane Doe #4's (K.B's)

mediation sessions, Smith discussed the investigation with BCA staff members.  Following the mediation sessions, a BCA staff member prepared a report summarizing the investigation.  The staff member recommended that Miller apologize to Jane Doe #1 and that Miller no longer be permitted to meet with female cadets one-on-one.  The staff member preparing the report further recommended that Miller's direct supervisor inform Miller that the incident would be placed in his file and that BCA could not allow such poor judgment and decision-making in the future.  According to the United States, Smith reviewed the report and approved the recommendation therein.  The United States alleges that Smith did not report the alleged child abuse by Miller in relation to Jane Doe #1 as required by federal law.  Such conduct was, according to the United States, only revealed to law enforcement in August 2013 in the course of an investigation of Miller's misconduct related to another female cadet.

On September 25, 2014, Smith was charged with a single violation of 18 U.S.C. § 2258, which provides as follows:

> ### § 2258.  Failure to report child abuse
>
> A person who, while engaged in a professional capacity or activity described in subsection (b) of section 226 of the Victims of Child Abuse Act of 1990 [42 U.S.C. § 13031(b)[1]] on Federal land or in a federally operated (or contracted) facility, learns of facts that give reason to suspect that a child has suffered an incident of child abuse, as defined in subsection (c) of that section [42 U.S.C. § 13031(c)[2]], and fails to make a timely report as required by

---

[1]      42 U.S.C. § 13031(b)(4) includes "[t]eachers, teacher's aides or assistants, school counselors and guidance personnel, school officials, and school administrators."

[2]      42 U.S.C. § 13031(c)(1) defines "child abuse" as "the physical or mental injury, sexual abuse or exploitation, or negligent treatment of a child."

subsection (a) of that section [42 U.S.C. § 13031(a)[3]], shall be fined under this title or imprisoned not more than 1 year or both.

The United States contends that Smith, in his capacity as a school administrator, did not, as soon as possible, make a report to a designated agency when he learned of facts that gave him reason to suspect that a child, Jane Doe #1, had suffered an incident of child abuse.   (DN 84, Superseding Indictment, Count 2.)

### Discussion

**A.  The United States' Motions in Limine**

The Court will begin by addressing the motions in limine filed by the United States.   All of the motions addressed below are ripe for review.

**1.  Motion to Strike Defendants' Proposed Jury Instructions and Limit Argument Regarding Mens Rea (DN 129)**

**AND Smith's Motion to Overrule United States' First Motion in Limine (DN 196)**

The United States has filed a motion (DN 129) to strike Smith's proposed jury instructions and to limit Smith's argument regarding the *mens rea* that is required under 18 U.S.C. § 2258.   Stated simply, the United States contends that Smith's pretrial filings make clear

---

[3]      42 U.S.C. § 13031(a) provides as follows: "A person who, while engaged in a professional capacity or activity described in subsection (b) on Federal land or in a federally operated (or contracted) facility, learns of facts that give reason to suspect that a child has suffered an incident of child abuse, shall as soon as possible make a report of the suspected abuse to the agency designated under section (d)."

       42 U.S.C. § 13031(d), in turn, provides as follows: "For all Federal lands and all federally operated (or contracted) facilities in which children are cared for or reside, the Attorney General shall designate an agency to receive and investigate the reports described in subsection (a) of this section.   By formal written agreement, the designated agency may be a non-Federal agency. When such reports are received by social services or health care agencies, and involve allegations of sexual abuse, serious physical injury, or life-threatening neglect of a child, there shall be an immediate referral of the report to a law enforcement agency with authority to take emergency action to protect the child.   All reports shall be promptly investigated, and whenever appropriate, investigations shall be conducted jointly by social services and law enforcement personnel, with a view toward avoiding unnecessary multiple interviews with the child."

that he will argue[4] that the United States should be required to prove that he *knew* he was required by law to report the facts that gave reason to suspect child abuse.  (DN 129 at 1 (citing DN 126, 127).)  The United States points out that certain of Smith's co-defendants in this case previously raised this argument in three motions to dismiss.  (DN 50, 58, 59.)  The Court denied the motions to dismiss.  (DN 82.)  The United States contends that while Smith was not a party to the motions to dismiss, he does not raise any new or different arguments that would give the Court reason to come to a different conclusion on the issue.

The United States argues that Smith's argument in favor of "heightened *mens rea*," which would require knowledge by Smith of his statutory obligation to report suspected child abuse, ignores the plain language of Section 2258, congressional intent behind the statute, and relevant Sixth Circuit precedent.  In denying Smith's co-defendants' motions to dismiss, the Court stated that the motions were "denied for the reasons stated in the United States' response."  (DN 52.)  Specifically with respect to the *mens rea* issue, the Court stated that "there is a *mens rea* element."  (DN 52.)  Having reviewed both the United States' first motion in limine (DN 129) and its response to the motions to dismiss (DN 79), the Court concludes that the United States' position with respect to *mens rea* is consistent as between the two pleadings.

Smith initially filed a single response (DN 157) to a number of the United States' motions in limine.  Rather than respond in any substance to the motions in limine, Smith requested that the Court hear oral arguments on such motions.  The Court ordered Smith to file

---

[4]       At the time that the United States filed its motions in limine, it was anticipated that Smith would be tried jointly with one co-defendant, Rolanshia Windom ("Windom").  For that reason, the United States' arguments in DN 129 and some of its other pretrial motions refer to both Smith and Windom.  However, Smith will be tried alone at the trial set to begin on February 17, 2016.  The United States and Smith filed a joint report (DN 169) delineating which of the pending motions – as of September 16, 2015 – require rulings and clarifying Smith's adoption of certain motions or portions of motions filed by his co-defendants.

substantive responses to those United States motions in limine that he opposes and stated that failure to respond to a motion in limine would be construed as acquiescence thereto.  (DN 195.) Thereafter, Smith filed responses to a number of the United States' motions in limine.  (*See* DN 197-201.)  With respect to DN 129, however, Smith submitted a filing styled, "Defendant's Memorandum in Opposition to Government's Motion in Limine #1 (DN 129)[,] Motion to Strike Defendant's Jury Instructions and Limit Argument Regarding Mens Rea."  (DN 196.)  Despite the fact that DN 196 is framed as an opposition to the United States' proposed jury instructions, the Court construes DN 196 as a response to DN 129.[5]

In short, Smith argues that Section 2258 lacks an express *mens rea* requirement and that, particularly where an "ordinary citizen" like Smith is subject to a reporting requirement and must "decipher the contours" of the abuse that must be reported, the Court should adopt a heightened *mens rea*.  (*See* DN 196 at 6-9.)  He contends that the United States should be required to prove that he had *knowledge* of the requirement, pursuant to Section 2258, that he report suspected child abuse of which he is aware.  In expressing his position, Smith relies almost exclusively on a memorandum opinion prepared by Assistant Attorney General, Office of Legal Counsel, Virginia A. Seitz.  (*See id.*; DN 126-1, 196.)

The undersigned concurs with Chief Judge Joseph H. McKinley, Jr.'s decision on this issue in his ruling on DN 50, 58, and 59, and detects no basis for a contrary ruling on DN 129 and DN 196.  The statute requires that a covered individual who "*learns of* facts that give reason to suspect that a child has suffered an incident of child abuse . . . and fails to make a timely report" shall be fined or imprisoned, or both, as set forth in Title 18.  18 U.S.C. § 2258 (emphasis

---

[5]     Smith subsequently filed a distinct document entitled, "Defendant's Proposed Jury Instructions."   (DN 213.)

added).  By its terms, the mental state required by Section 2258 is knowledge of facts that give reason to suspect that a child has suffered child abuse, not knowledge of the reporting requirement.  Additionally, to read in a heightened *mens rea* would be contrary to congressional intent and Sixth Circuit precedent.  The opinion of Assistant Attorney General Seitz, while well-articulated, is not binding on this Court; further, the Court does not find it to be persuasive.

Accordingly, the United States' first motion in limine (DN 129) is GRANTED. Additionally, Smith's motion to "overrule" DN 129 (DN 196) is DENIED insofar as it relates to the *mens rea* issue.  DN 196 is also DENIED insofar as it is a request that the Court adopt Smith's proposed jury instructions; the Court will rule on both parties' proposed jury instructions (DN 209, 213) by separate order.

### 2. Motion to Exclude Arguments, Evidence, and Jury Instructions Regarding the Provision of Training and the Dissemination of a Designated Reporting Agency and Optional Reporting Forms (DN 130)

In its second motion in limine, the United States requests that the Court "exclude at trial all arguments and evidence relating to the provision of training and the dissemination of a designated reporting agency and optional reporting forms."  (DN 130 at 1.)  Pursuant to the Court's order (DN 195) that Smith respond to any of the United States' motions in limine to which he is opposed, Smith filed a response (DN 198).

### a. Provision of training

First, the United States requests that the Court exclude arguments and evidence related to the provision of training as it relates to reporting requirements under 18 U.S.C. § 2258.  Smith

intends to argue that provision of training as detailed in 42 U.S.C. § 13031(h)[6] is a prerequisite to criminal liability under 18 U.S.C. § 2258.  (*See, e.g.*, DN 127 at 3.)  Smith contends that he did not receive the mandated training, and therefore, the United States cannot prove that he violated Section 2258.  The United States contends that pursuant to the plain language of Section 2258, provision of – or failure to provide – training to school administrators such as Smith is not an element of Section 2258.  As such, the United States argues, evidence related to a lack of training is irrelevant pursuant to the standard set forth in Rule 401 of the Federal Rules of Evidence ("FRE"), and admission of such evidence would only serve to mislead and confuse the jury.  The United States further argues that by denying Smith's co-defendants' motions to dismiss (DN 82), the Court has already held that training is not a prerequisite to criminal liability under Section 2258.

As the United States notes, the Court addressed this argument in its order (DN 82) denying the motion to dismiss filed by several of Smith's co-defendants.  With respect to the issue of training, the Court stated, "Training is not a prerequisite to criminal responsibility." (*Id.*)  The undersigned concurs with Chief Judge McKinley's ruling and is not aware of any reason to stray from that conclusion in ruling on this motion.  The plain language of 18 U.S.C. § 2258 and 42 U.S.C. § 13031 shows that training on the reporting requirement is not a prerequisite to liability under Section 2258.  Section 2258 makes no mention of training, and it

---

[6]    42 U.S.C. § 13031(h) provides as follows: "Training of prospective reporters. All individuals in the occupations listed in subsection (b)(1) who work on Federal lands, or are employed in federally operated (or contracted) facilities, shall receive periodic training in the obligation to report, as well as in the identification of abused and neglected children."  In turn, subsection (b)(1) defines a certain category of "[p]ersons engaged in . . . professions and activities" that include: "Physicians, dentists, medical residents or interns, hospital personnel and administrators, nurses, health care practitioners, chiropractors, osteopaths, pharmacists, optometrists, podiatrists, emergency medical technicians, ambulance drivers, undertakers, coroners, medical examiners, alcohol or drug treatment personnel, and persons performing a healing role or practicing the healing arts." 42 U.S.C. § 13031(b)(1).

does not cross-reference 42 U.S.C. § 13031(h), the subsection to which Smith points as establishing a training requirement. Subsection 13031(h) states that "individuals in the occupations listed in subsection (b)(1) . . . shall receive periodic training in the obligation to report, as well as in the identification of abused and neglected children." 42 U.S.C. § 13031(h). However, subsection (b)(1) relates to health care-related occupations, including, but not limited to physicians, dentists, and medical residents. *Id.* at (b)(1). Smith's position as an administrator at BCA does not fall within the scope of subsection (b)(1). As subsection (h) is limited to those individuals whose positions are listed in subsection (b)(1), the Court cannot conclude that the training requirement attaches to Smith.

Accordingly, the United States' second motion in limine (130) is GRANTED as it relates to the provision of training. Arguments and evidence to the effect that training detailed in 42 U.S.C. § 13031(h) is a prerequisite to criminal liability under 18 U.S.C. § 2258 will not be permitted at trial.

### b. Identification of agency to which to report suspected child abuse

Second, the United States requests that the Court preclude Smith from arguing or presenting that the United States Attorney General failed to designate an agency to which reports of suspected child abuse must be made. Smith has made it clear that he intends to put forth such an argument. (*See, e.g.*, DN 196 at 5; DN 198 at 3-4.) Section 2258 does not mention a designated agency to which reports of suspected child abuse must be made. Rather, it creates criminal liability for "failure to make a timely report as required by [42 U.S.C. § 13031](a) . . . ." 18 U.S.C. § 2258. In turn, 42 U.S.C. § 13031(a) requires that covered persons "make a report of the suspected abuse to the agency designated under [42 U.S.C. § 13031](d)[.]" 42 U.S.C. §

13031(a).  Subsection (d) is the source of Smith's argument.  It provides that, "[f]or all Federal lands and all federally operated (or contracted) facilities in which children are cared for or reside, the Attorney General shall designate an agency to receive and investigate the reports described in subsection (a)[.]"  42 U.S.C. § 13031(d).  Smith wishes to argue that the Attorney General failed to designate an agency to receive such reports, and as such, Smith cannot be criminally liable for violating 18 U.S.C. § 2258.

As is discussed in greater detail below in relation to the United States' fifth motion in limine (DN 133), the Attorney General *has*, in fact, designated an agency to which reports of suspected child abuse pursuant to Section 2258 must be made.  *See* 28 C.F.R. § 81.2[7]

Accordingly, as it relates to arguments and evidence of failure by the Attorney General to designate an agency to which reports of suspected child abuse must be made, the United States' second motion in limine (DN 130) is GRANTED.

### c.      Dissemination of reporting forms

Finally, the United States requests the exclusion of evidence of a failure to disseminate a written form by which reports of suspected child abuse are to be made.  Smith contends that the applicable statutory framework requires that a "reporting form" be disseminated and that failure

---

[7]      28 C.F.R. § 81.2 provides as follows:

> Reports of child abuse required by 42 U.S.C. 13031 shall be made to the local law enforcement agency or local child protective services agency that has jurisdiction to investigate reports of child abuse or to protect child abuse victims in the land area or facility in question. Such agencies are hereby respectively designated as the agencies to receive and investigate such reports, pursuant to 42 U.S.C. 13031(d), with respect to federal lands and federally operated or contracted facilities within their respective jurisdictions, provided that such agencies, if non-federal, enter into formal written agreements to do so with the Attorney General, her delegate, or a federal agency with jurisdiction for the area or facility in question.

by the government to disseminate such forms is fatal to the United States' case. (*See, e.g.*, DN 196 at 5; DN 198 at 4-5.)  He points to 42 U.S.C. § 13031(e), which provides as follows:

> In every federally operated (or contracted) facility, and on all Federal lands, a standard written reporting form, with instructions, shall be disseminated to all mandated reporter groups.  Use of the form shall be encouraged, but its use shall not take the place of the immediate making of oral reports, telephonically or otherwise, when circumstances dictate.

42 U.S.C. § 13031(e).  Smith argues that pursuant to subsection (e), reporting forms were required to have been distributed to mandatory reporters at BCA, and that he cannot be found guilty of violating Section 2258 because the government did not disseminate such a form.  He contends that the distribution of reporting forms "acts not only as a uniform way of reporting [] child abuse claims but it also acts to put individuals on notice of the requirement to report . . . ." (DN 198 at 5.)

It is true that neither 18 U.S.C. § 2258 nor 42 U.S.C. § 13031(a) mentions reporting forms.  Nonetheless, as with the issue of designating an agency, the Court is not prepared to make a ruling as to whether and how a lack of distribution of reporting forms might affect the elements that the United States must prove at trial.  Again, the Court can imagine circumstances in which a lack of distribution of reporting forms might be relevant.[8]

---

[8] It is worth noting that the parties appear to disagree regarding who bore responsibility for distributing reporting forms.  Smith clearly believes that the government was obligated to do so.  The United States appears to suggest that Smith himself was responsible for disseminating such forms.  (*See* DN 130 at 3 ("With respect to Defendant Smith, this buck-passing seems misplaced, as he was the Director of Bluegrass Challenge Academy and responsible for [the] Academy's policies and procedures.").)  Moreover, they disagree about the import of the forms themselves.  The United States emphasizes the "optional" nature of the forms based on the language of 42 U.S.C. § 13031(e), and Smith describes the forms as "a uniform way of reporting . . . ."  (DN 198 at 5.)  The ambiguities associated with these points are just two reasons that the Court believes it would be improper to exclude all evidence related to reporting forms at this juncture.

Accordingly, the United States' second motion in limine (DN 130) is DENIED WITHOUT PREJUDICE insofar as it requests the exclusion of arguments and evidence of a failure to disseminate reporting forms.

### 3. Motion to Exclude Arguments and Evidence Regarding Selective Prosecution (DN 131)

In its third motion in limine, the United States moves to exclude arguments and evidence regarding Smith's allegation of selective prosecution.  Specifically, the United States argues that Smith should not be allowed to suggest or argue that he is being unfairly singled out while other individuals who also failed to report child abuse as alleged in the superseding indictment were not prosecuted.  The United States also argues that Smith should be precluded from arguing issues related to other individuals who have not been charged with crimes arising from the criminal activity at issue in this case.  While the United States includes Smith in the motion, its arguments appear to be largely directed at Windom.  Smith does not appear to have objected to the third motion in limine and was given an opportunity to do so.  (*See* DN 195.)  Therefore, the Court assumes that Smith has no objection.  (*Id*. at 2 ["If Smith fails to respond in writing and on the merits to any of the motions in limine, the Court will assume that Smith does not object to those particular motions in limine."].)

Accordingly, the United States' third motion in limine (DN 131) is GRANTED.

### 4. Motion to Exclude Jane Doe #1's Evaluation Sheet (DN 132)

In its fourth motion in limine, the United States moves to exclude a three-page evaluation sheet completed by Jane Doe #1.  The United States asserts that this is essentially an exit survey completed by cadets when they are about to graduate from BCA.  The survey is undated, but the United States avers that Jane Doe #1 graduated from BCA on or around June 8, 2013.  The

12

United States has filed this motion because Smith has indicated *an intent* to introduce it into evidence. In response to a question asking which cadre or staff member Jane Doe #1 would like to recognize for their positive influence in her life, she listed Miller because "he wouldn't let me just quit the program even though I could have left anytime I wanted." (DN 132-1, p. 3.)

The United States argues that the evaluation sheet is not relevant because the applicable statues require that suspected child abuse be reported as soon as possible, and the evaluation sheet was completed in June 2013. Thus, the United States argues that Smith was already in violation of the applicable statutes in June 2013, and therefore the evaluation sheet is not relevant. The United States asserts that Smith might argue that the fact that Jane Doe #1 listed Miller as having a positive impact on her time at BCA makes it less likely that her allegations, made four months earlier, are true. The United States contends that the ultimate truth about what happened between Miller and Jane Doe #1 is not a fact of consequence in this case; rather, the focus is on what Smith learned. The United States makes additional arguments that appear more appropriate for rehabilitation should Jane Doe #1 be questioned regarding the evaluation sheet, *e.g.*, Jane Doe #1 has explained that the statements on the evaluation sheet were prompted by a BCA member, she was forced to have additional interactions with Miller, and Miller did not do anything else inappropriate with respect to her.

The United States also argues that the evaluation sheet is more prejudicial than probative. That is, admitting the evaluation sheet would shift the focus of the trial to whether Miller actually abused Jane Doe #1.

Smith first argues that the admissibility of the evaluation sheet is dependent on the Court's rulings on his motions in limine. Smith states that, if the Court restricts evidence to the

narrow issue of what Smith knew about the accusations made by Jane Doe #1 against Miller related to an incident in February 2013 and what, if anything, he did in response to this knowledge, then the evaluation sheet is not relevant.  Smith also contends that the evaluation sheet might be relevant if Jane Doe #1 testifies in detail about the alleged February 2013 incidents and her testimony is inconsistent with her evaluation sheet remarks.  Smith thus asks the Court for permission to readdress the issue once the Court issues ruling on his motions in limine.

The Court is without sufficient information to rule on this motion at this time, especially because it is not certain that the evaluation sheet will be offered as evidence at trial or for what purpose.  Any specific evidentiary objection will be considered at trial.

Accordingly, the United States' fourth motion in limine (DN 132) is DENIED WITHOUT PREJUDICE.

### 5.  Motion to Admit Evidence Regarding Reporting of Other Incidents (DN 133)

In its fifth motion in limine, the United States moves to admit evidence regarding the reporting of two other incidents that occurred at BCA to the U.S. Army Criminal Investigation Command ("CID"):  (1) a May 2008 incident that involved a male cadre member at BCA and a female cadet; and (2) an August 2013 incident involving Miller and Jane Doe #3.  Specifically, the United States moves to admit evidence related to these incidents, including (1) a brief description of the incident without naming any of the parties involved; (2) how BCA reported the incident; and (3) with respect to the August 2013 incident, brief testimony that the incident underlying the present case came to light during the investigation of the August 2013 incident.

First, the United States argues that evidence related to these two incidents is relevant to prove which local law enforcement agency had jurisdiction to investigate reports at BCA.   The United States states, "According to John Smith, there is a Memorandum of Agreement with Fort Knox that required BCA to report any matter which might be criminal in nature to the Military Police Investigators.  Depending on the nature of the matter, either the Military Police or CID would be responsible for the investigation."  (*Id.*)  With respect to the May 2008 incident, the United States avers, "According to John Smith, the incident was reported to the U.S. Army Criminal Investigation Command."  (DN 133, p. 2.)  With respect to the August 2013 incident, the United States avers, "Defendant John Smith was informed of the situation, and instructed another BCA staff member to report the incident to CID."  (*Id.*)  The United States asserts that it needs to prove that Smith failed to report the suspected child abuse as soon as possible to the local law enforcement agency or child protective services agency that had jurisdiction over BCA. Thus, the United States contends that evidence that BCA notifies CID of potential crimes, and CID investigates these crimes, tends to make it more probable that CID is a local law enforcement agency with jurisdiction over BCA.  Second, the United States argues that evidence related to any incident occurring before February 2013 is relevant to rebut the contention that Smith did not know to whom to report the incident at issue.  Finally, the United States argues that evidence regarding the August 2013 incident is relevant to show that the February 2013 incident was not reported as soon as possible.  That is, the fact that law enforcement learned of the February 2013 incident while investigating the August 2013 incident is probative of the fact that the February 2013 incident was not timely reported.  Additionally, the United States asserts

that the jury may be confused as to how the government learned of the February 2013 incident without knowing that it was uncovered in the investigation of the August 2013 incident.

Smith argues that whether or not the May 2008 and August 2013 incidents are relevant depends largely on how the Court rules on other motions that address the admissibility of Jane Doe #1's evaluation sheet and certain jury instructions.  Smith states that the United States has conceded that the evidence in this case should be narrowly focused on what Smith learned, not the reporting of other incidents.   Smith also argues that, based on the United States' proposed jury instructions, whether BCA reported other incidents is irrelevant; however, it might be relevant if the Court agrees with the jury instruction proposed by Smith.  Smith states that if there was testimony from a witness claiming to not have knowledge of the reporting requirement, the issue of BCA's reporting history would be relevant.

The test for relevancy is whether the evidence "has any tendency to make a fact more or less probable than it would be without; and the fact is of consequence in determining the action." Fed. R. Evid. 401.  This standard is "extremely liberal."  *United States v. Whittington*, 455 F.3d 736, 738 (6th Cir. 2006) (quoting *Douglass v. Eaton Corp.,* 956 F.2d 1339, 1344 (6th Cir. 1992)).

One of the elements of Section 2258 is failure "to make a timely report as required by subsection (a)."  18 U.S.C. § 2258.  Subsection (a) of 42 U.S.C. § 13031 states, "A person who . . . learns of facts that give reason to suspect that a child has suffered an incident of child abuse, shall as soon as possible make a report of the suspected abuse to the agency designated under section (d)."  Subsection (d) defines the "agency designated to receive report and action to be taken," stating as follows:

>For all Federal lands and all federally operated (or contracted) facilities in which children are cared for or reside, the Attorney General shall designate an agency to receive and investigate the reports described in subsection (a) of this section.  By formal written agreement, the designated agency may be a non-Federal agency.  When such reports are received by social services or health care agencies, and involve allegations of sexual abuse, serious physical injury, or life-threatening neglect of a child, there shall be an immediate referral of the report to a law enforcement agency with authority to take emergency action to protect the child.

42 U.S.C. § 13031(d).  28 C.F.R. § 81.2 states:

>Reports of child abuse required by 42 U.S.C. 13031 shall be made to the *local law enforcement agency or local child protective services agency that has jurisdiction to investigate reports of child abuse* or to protect child abuse victims in the land area or facility in question. *Such agencies are hereby respectively designated as the agencies to receive and investigate such reports, pursuant to 42 U.S.C. 13031(d), with respect to federal* lands and federally operated or contracted facilities within their respective jurisdictions, provided that such agencies, if non-federal, enter into formal written agreements to do so with the Attorney General, her delegate, or a federal agency with jurisdiction for the area or facility in question.

28 C.F.R. § 81.2 (emphasis added).  28 C.F.R. § 81.5 defines "local child protective services agency" and "local law enforcement agency" as follows:

>*Local child protective services agency* means that agency of the federal government, of a state, of a tribe or of a local government that has the primary responsibility for child protection within a particular portion of the federal lands, a particular federally operated facility, or a particular federally contracted facility in which children are cared for or reside.

>*Local law enforcement agency* means that federal, state, tribal or local law enforcement agency that has the primary responsibility for the investigation of an instance of alleged child abuse occurring within a particular portion of the federal lands, a particular

> federally operated facility, or a particular federally contracted
> facility in which children are cared for or reside.

28 C.F.R. § 81.5 (emphasis added).

The Court finds that evidence regarding the reporting of the May 2008 incident is admissible. How the May 2008 incident at BCA was reported is relevant to show that CID was the local law enforcement agency (or local child protective services agency) that had jurisdiction to investigate reports of child abuse and therefore was the agency to whom the February 2013 incident involved in Jane Doe #1 should have been reported.

The Court finds that evidence of the August 2013 incident, in the manner detailed by the United States above, is relevant to demonstrate that the February 2013 incident was not timely reported.

Accordingly, as is provided in greater detail in the order below, the United States' fifth motion in limine (DN 133) is GRANTED.

### 6. Motion to Exclude Evidence of Defendants' Non-Pertinent Character Traits and Prior Lawful Conduct (DN 134)

In its sixth motion in limine, the United States seeks to exclude "all evidence of [Smith's] *non-pertinent* traits of character and prior instances of lawfulness and/or good conduct, except reputation or opinion evidence offered by character witnesses strictly in accord with the limitations of Federal Rule of Evidence 405(a)." (DN 134, p. 2 [emphasis added].) The United States argues that, because only pertinent character traits are admissible, non-pertinent character traits are not admissible. Smith states that he reads this motion in limine as nothing more than a request that the rules of evidence be followed; in this regard, he has no objection to the motion.

The Court agrees with Smith.  On top of that, because of the general nature of this motion, the Court lacks sufficient information to rule on it at this time.  The Court will respond to any specific evidentiary objections at trial.

Accordingly, the United States' sixth motion in limine (DN 134) is DENIED.

### 7. Motion to Bar Arguments or Evidence Designed to Elicit Jury Nullification (DN 135)

In its seventh motion in limine, the United States seeks to "preclude [Smith] from arguing, or otherwise presenting evidence or pursuing lines of inquiry designed to elicit[] jury nullification."  (DN 135, p. 1.)  The United States argues that it is improper for a defendant to suggest in any way that the jury should acquit even if finds that the government has met its burden of proof.  Smith states that he has no objection to this motion in limine, as he reads it to be nothing more than a request that the rules of evidence be followed in this matter.

The Court agrees that a defendant may not offer evidence and testimony for the sole purpose of inviting jury nullification.  *See, e.g.*, *United States v. Jones*, No. 3:13-CR-89, 2013 WL 5777684, at *2 (E.D. Tenn. Oct. 25, 2013) (barring introduction of video presentation to prevent jury nullification); *United States v. Duval*, 865 F. Supp. 2d 803, 808-09 (E.D. Mich. 2012) ("The defendants are not entitled to offer evidence and testimony for the sole purpose of inviting jury nullification."); *United States v. Rabinowitz*, No. 2:11-CR-230, 2012 WL 3150959, at *2 (S.D. Ohio Aug. 2, 2012) ("Of course Defendant cannot introduce his purported health issues in any attempt to obtain jury nullification.").  However, as Smith points out, this motion in limine appears to request an order that the parties follow the law.  Moreover, there is no actual dispute before the Court at this time.  To the extent necessary, the Court will rule on any specific evidentiary objections at trial.

19

Accordingly, the United States' seventh motion in limine (DN 135) is DENIED.

### 8.   Motion to Admit Incident Report Regarding Stephen Miller (DN 170)

In its ninth motion in limine,[9] the United States seeks to admit a February 12, 2013 incident report regarding allegations that Miller inappropriately touched two female cadets. First, the United States argues that the incident report is relevant.  In particular, the United States argues that the incident report is relevant to one element of the offense at issue: that Smith learned of facts that gave him reason to suspect a child had suffered an incident of abuse.  The United States asserts that the incident report, which Smith has acknowledged that he reviewed, is one of the means by which Smith learned of the allegations by Jane Doe #1 and Jane Doe #4 (K.B.) against Miller and is therefore relevant.

Second, the United States argues that that incident report should be admitted because it is self-authenticating under FRE 902(11) as a certified domestic record of a regularly conducted activity.  The United States contends that the incident report is accompanied by a certificate conforming to the rule.  The United States further contends that the incident report is admissible for the truth of the matter asserted therein under the exception in FRE 803(6) for records of a regularly conducted activity.   Finally, in a footnote, the United States argues that, if the Court does not admit the incident report as a business record, it should still be admitted as non-hearsay evidence.  The United States asserts that Smith authenticated the incident report during his grand jury testimony and the incident report can be used for a non-hearsay purpose, *i.e.*, to show that Smith had notice of the contents of the report.

---

[9]      The United States' eighth motion in limine addressed statements made by Windom and has been denied as moot.  (*See* DN 178.)

In his response, Smith argues that the incident report is inadmissible hearsay.   First, Smith argues that the incident report does not meet the requirements of FRE 803(6).   Smith asserts that Kemmye Graves, a policy analyst, prepared the report in her role as BCA's EEO counselor and the preparation of this report, while part of her duties, was not a routine or a habitual practice   Smith also asserts that the incident report was prepared with an eye toward possible litigation for sexual harassment.   Second, Smith argues that the incident report does not meet the requirements of FRE 902(11) for self-authentication because it does not meet the business records exception under FRE 803(6) and the certification of Patrick Yewell is deficient.

All relevant evidence is admissible except as otherwise provided by the Constitution, United States Congress, and the Federal Rules of Evidence.  Fed. R. Evid. 402.  To prove a violation of 18 U.S.C. § 2258, the United States must show, among other things, that Smith learned of facts that gave him reason to suspect that a child had suffered an incident of child abuse.  The Court finds that *if*, as the United States asserts, Smith reviewed the incident report, then it is clearly relevant to show that Smith learned of facts that gave him reason to suspect child had suffered child abuse.   Additionally, the Court finds that the incident report is not hearsay *if* it is offered to show that Smith had *notice or knowledge* of the report of suspected child abuse.  *See United States v. Boyd*, 640 F.3d 657, 664 (6th Cir. 2011) ("Statements offered to prove the listener's knowledge are not hearsay.").   This is because, to show a violation of 18 U.S.C. § 2258, the United States does not need to prove the truth of the underlying allegations of child abuse; rather, it must only prove that Smith learned of facts, *i.e.*, had knowledge or notice, that a child had suffered an incident of child abuse.   The Court turns next to the question of whether the incident report is self-authenticating.

FRE 902 lists items of evidence that are self-authenticating; that is, they require no extrinsic evidence of authenticity in order to be admitted.  One of those exceptions is "[t]he original or a copy of a domestic record that *meets the requirements of Rule 803(6)(A)-(C)*, as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court. Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record – and must make the record and certification available for inspection – so that the party has a fair opportunity to challenge them."  Fed. R. Evid. 902(11) (emphasis added).

FRE 803 lists exceptions to the hearsay rule and includes, at 803(6), a "record of an act, event, condition, opinion, or diagnosis" if "**(A)** the record was made at or near the time by — or from information transmitted by — someone with knowledge; **(B)** the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; [and] **(C)** making the record was a regular practice of that activity." Fed. R. Evid. 803(A)-(C).  Therefore, to show that a document is self-authenticating, the United States must (1) show that FRE 803(A)-(C) applies; and (2) submit a certification by a custodian showing same.

*Brauninger v. Motes*, 260 F. App'x 634 (5th Cir. Dec. 20, 2007) (unpublished opinion) is instructive.  Plaintiff Brauninger alleged that he was terminated on the basis of his age, and his employer countered that he was terminated because he sexually harassed other employees.  At issue was the admissibility of reports and letters created by two human resource managers (Amy Williamson and Judy Ellison) in the course of an investigation regarding sexual harassment by Brauninger:  "Williamson's report chronicle[d] the steps in her investigation, the complaints she

22

received, the witnesses she interviewed, statements made during those interviews, and the basis for the decision to terminate Brauninger. Her termination letter to Brauninger summarize[d] the findings of her investigation. Ellison's report likewise chronicle[d] her own follow-up investigation, and her letter to Brauninger similarly summarize[d] her additional findings." *Id*. at 636. The district court admitted the reports and letters, finding that they contained non-hearsay and hearsay evidence admissible under the business records exception of FRE 803(6). *Id*. at 636-37.

The Fifth Circuit found that the statements made by various employees, other than Williamson and Ellison, constituted non-hearsay because they were not offered to prove the truth of the matter and were instead offered to prove what was said to Williamson and Ellison and thus what was relied upon in making the decision to fire Brauninger. The Fifth Circuit further found that, while the statements made by employees were not hearsay, the reports themselves constituted out-of-court statements made by Williamson and Ellison; however, the reports fell within FRE's 803(6) business records exception. The Fifth Circuit stated, "The [district] court correctly found that the reports were made at or near the time of the investigations, were based on Williamson's and Ellison's personal knowledge of their own investigations, and were the result of a regularly conducted business activity. As to the last of those findings, the court properly noted that the investigation and documentation of sexual harassment allegations are ordinary business practices and regular parts of Williamson's and Ellison's duties as human resource managers." *Id*. at 637.

Like the reports in *Brauninger*, the February 12, 2013 incident report falls into the business records exception. For one, it appears that the report was made on February 12, 2013

for an incident occurring on or about February 8, 2013.  The report was made by Graves in her capacity as the BCA's EEO officer; Graves also apparently had direct knowledge of the allegations of inappropriate behavior by Miller.  Part of Graves's role as EEO officer would be investigating allegations of sexual harassment and making a record of that investigation would be a regular practice of that activity.  Therefore, the Court finds that the incident report meets all the requirements of FRE 803(6)(A)-(C).  *See La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 481 (5th Cir. 2002) (finding that notes created by vice president of human resources regarding sexual harassment allegations were covered by the business records exception enumerated in FRE 803(6) and were trustworthy); *Kenawell v. DuBois Bus. Coll., Inc.*, No. CIV. A. 3:2005-429, 2008 WL 768139, at *7 (W.D. Pa. Mar. 20, 2008) ("It is clear from Syktich's Affidavit that the Incident Report was made for business purposes alone, that is, as a procedure engaged in when an employee reports a case of sexual harassment. It was also prepared at a time near the incident, after Gracey had shown her a copy of an email she received from Plaintiff and also in the course of an investigation into the alleged sexual harassment."); *Small v. E.I. DuPont de Nemours & Co.*, No. CIVA 05-216, 2006 WL 2710439, at *2 (E.D. La. Sept. 19, 2006) ("Obviously, decisionmakers [sic] in a large company must rely on the information gathered and recommendations offered by employees designated to accomplish certain tasks. Such information is an exception to the hearsay rule."); *cf. Nair v. Columbus State Cmty. Coll.*, No. 2:02-CV-595, 2008 WL 3822341, at *14 (S.D. Ohio Aug. 12, 2008) ("Unlike a dated report or memorandum addressed to a supervisor or 'to file' and written on official letterhead or bearing some other indicia of regular business activity, this undated, unaddressed document does not

24

bear any indicia of having been created in the regular course of Laughbaum's activities or that it was kept in the regular course of Defendant's business.").

The Court turns next to the sufficiency of the certificate of authenticity by Yewell. (*See* DN 170-2.)  The certificate covers all parts required by FRE 803(6) and FRE 902(11).  Smith admits as much with respect to FRE 902(11).  (*See* DN 201, p. 6 ["[O]n its face the certification presented by the Government and executed by Mr. Yewell appears to be in compliance with FRE 901(11) . . . ."].)  Yewell, as the director of BCA, is the custodian of records for BCA and attests to all parts enumerated in 803(6).  The Court will not repeat them here.  Yewell does not need to have individual knowledge of the incident report; he only needs to be familiar with BCA's record-keeping practices.  *See In re Custodian of Records of Variety Distrib., Inc.,* 927 F.2d 244, 248 (6th Cir.1991) ("This court has held that the custodian need not be in control of or have individual knowledge of the particular corporate records subject to the subpoena, but need only be familiar with the company's recordkeeping practices."); *see also United States v. Weinstock*, 153 F.3d 272, 276 (6th Cir. 1998) ("Rule 803(6) does not require that the custodian personally gather, input, and compile the information memorialized in a business record.").  Although Smith states that "it is obvious to the defense that Mr. Yewell has signed a false attestation in this matter," the Court finds no such indication, nor does Smith offer any other than this lone statement.  (*See* DN 201, p. 6.)  Therefore, the Court finds that the incident report is self-authenticating under FRE 902(11).  Additionally, as stated above, it also meets the hearsay exception listed in FRE 803(6).  Consequently, the incident report is self-authenticating and, even if hearsay, is admissible under a hearsay exception.

25

Once the proponent establishes the stated requirements of the exception enumerated in 803(6), the burden shifts to opponent to show that the source of the information or method or circumstances of preparation indicate a lack of trustworthiness.  Comments re 2014 Amendments to FRE 803(6).   "It is appropriate to impose this burden on [sic] opponent, as the basic admissibility requirements are sufficient to establish a presumption that the record is reliable." *Id*.  For example, the opponent might argue that a record was prepared in anticipation of litigation.  *Id*.  That is exactly what Smith argues here – that the very nature of a sexual harassment claim "renders an eye toward litigation inherent in an investigation thereof."  (DN 201, p. 5.)  Based on the cases cited above, the Court disagrees.  *See, e.g.*, *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 481 (5th Cir. 2002) ("No reason to doubt the trustworthiness of notes in investigative report.  Indeed, to the extent that Clark, a vice-president at Catalyst, might have been dishonest in recording these matters, he surely had an incentive to alter his notes to omit evidence of Craft's homosexual advances to employees rather than to accentuate it.").

Accordingly, the United States' ninth motion in limine (DN 170) is GRANTED.

**B.  United States' Notice of Intent to Introduce and Motion to Admit Evidence of Other Acts Pursuant to FRE 404(b) (DN 120)**

The United States has filed a "Notice of Intent to Introduce and Motion to Admit Evidence of Other Acts Under Fed. R. Evid. 404(b)" ("Notice of Intent") (DN 120).  In the Notice of Intent, the United States files notice and simultaneously moves the Court to admit testimony and other evidence concerning a complaint made by a female cadet, Jane Doe #4 (K.B.), that Stephen Miller had inappropriate sexual contact with her in early February 2013 and evidence that Smith learned of this complaint at approximately the same time that he learned of

the Jane Doe #1's complaint that Miller had inappropriate sexual contact with Jane Doe #1.[10] Smith filed a response (DN 158) stating that he intends to orally argue the 404(b) issue as well as the admissibility of the United States' exhibits at a time specified by the Court.  In a trial brief (DN 212, pp. 5-6), Smith also raises an objection to the introduction of evidence at trial of prior bad acts by the defendant; Smith does not specify the basis of his objection.

FRE 404(b)(1) states, "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  *Id*. at (b)(2).  On request by a defendant in a criminal case, the prosecutor must, before trial, provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial.  *Id*. at (b)(2)(A).

Although the United States filed the Notice of Intent in accordance with FRE 404(b)(2), the United States initially argues that the proffered evidence is inextricably intertwined with the charged offense and is therefore *outside* the scope of FRE 404(b).  The United States alternately argues that, even if the Court does not find that the proffered evidence is inextricably intertwined with the charged offense, it should be admitted under FRE (b)(2).  The Court will address each argument in turn.

---

[10]      The Notice of Intent also gives notice of and seeks to admit certain evidence against defendant Rolanshia Windom.  Criminal proceedings against Windom have been continued.  (DN 165.)  Therefore, the Court will only address the portions of the Notice of Intent/Motion to Admit that relate to Smith and his trial.

### 1.   FRE 404(b) not applicable

The Sixth Circuit has held that FRE 404(b) is not applicable where the challenged evidence is "inextricably intertwined" with the evidence of the crime charged. *United States v. Everett*, 270 F.3d 986, 992 (6th Cir. 2001); *see also* 1991 Comments to Fed. R. Evid. 404(b) ("The amendment does not extend to evidence of facts which are 'intrinsic' to the charged offense."). "'Intrinsic' acts . . . are those that are part of a single criminal episode. Rule 404(b) is not implicated when the other crimes or wrongs evidence is part of a continuing pattern of illegal activity." *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995). This evidence has been referred to as background evidence or "res gestae." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). "Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id*.

The United States argues that the proffered evidence has a temporal and spatial connection with the charged offense, as the incidents occurred at BCA in Spring 2013, either shortly before or roughly contemporaneous with the incident involving Jane Doe #1 that serves as the basis of the criminal indictment against the defendant. The United States further argues that the proffered evidence is part of a continuing pattern of activity – Miller acting inappropriately with female cadets – of which Smith had knowledge. Additionally, the United States asserts that the proffered evidence is a prelude to the charged offense of failure to report the suspected child abuse of Jane Doe #1, is directly probative of that offense, and completes the

28

story of the charged offense.  The United States argues that 18 U.S.C. § 2258 requires that it prove that Smith learned of facts that gave reason to suspect that a child had suffered an incident of child abuse and failed to report it; thus, information about what he knew regarding Miller's behavior with female cadets shortly before or around the same time that Jane Doe # 1 alleged Miller forced her to touch his penis is important context in proving that Smith knew of facts that gave him reason to suspect that Miller had also abused Jane Doe # 1.  In other words, evidence that Smith knew that Jane Doe #4 (K.B.) had made a similar allegation around the same time as Jane Doe #1 shows that he knew of additional facts that gave reason to suspect that Jane Doe #1 had been abused.  The following cases are instructive.

In *United States v. Gibbs*, 797 F.3d 416 (6th Cir. 2015), the defendant was indicted and convicted on two counts of being a felon in possession of ammunition.  The counts were based on the following facts.  A group of men committed a drug heist in June 2013, stealing a significant amount of cash and marijuana from the home of an acquaintance whom they knew to be a drug dealer.  *Id*. at 419.  A second group of men – all friends or associates of the drug dealer – discovered that the first group was responsible for the theft and sought to take revenge.  *Id*. The defendant was part of the second group of men.   On August 28, 2013, while the first group of men was hanging out at a local car wash, the second group of men, including the defendant, allegedly took their revenge by committing a drive-by shooting at the carwash.  *Id*.  The defendant was also involved in another shooting incident involving one of his friends on September 1, 2013.  *Id*.  Bullet casings recovered from these two incidents served as the basis of the defendant's indictment for felon in possession of ammunition.  *Id*. at 419-20.

The Sixth Circuit considered several evidentiary issues, including whether the admission of testimony regarding a third shooting that occurred on September 21, 2013 was impermissible. The September 21, 2013 incident involved another drive-by shooting on a highway. Specifically, the United States sought to offer testimony from Godwin – a witness to the August 28, 2013 drive-by shooting and the September 21, 2013 drive-by shooting. "Godwin would testify that, on September 19, 2013, he was approached by Defendant, who threatened that if Godwin did not stop talking about how Defendant was responsible for the August 28 shooting and Pookie's death, Godwin would be the next person to get murdered. Godwin would also testify that [on September 21, 2013], two days after being threatened, Defendant and his comrades riddled Godwin's vehicle with at least thirty bullets while they were both driving down the highway." *Id*. at 420. The district court agreed with the United States that the details surrounding the September 21, 2013 highway drive-by shooting were necessary to complete Godwin's story and, alternately, that it was not barred by FRE 404(b) because it served a permissible purpose.

The Sixth Circuit disagreed with the district court's decision. The Sixth Circuit stated that the retaliation that occurred one month after the August 28, 2013 shooting was not at all necessary to determine whether the defendant possessed ammunition at an earlier time. The Sixth Circuit observed that "*Res gestae* cannot serve as a 'backdoor to circumvent [the] goals' of FRE 404(b)." *Id*. at 423 (quoting, in part, *Clay,* 667 F.3d at 698). "Outside of cases where the evidence truly provides background information, establishes a nexus between individuals, or completes the story of the charged offense, evidence of separate bad acts occurring on a

subsequent date, much later in the timeline relevant to the charged offense, will rarely constitute

background evidence." *Id.* The Sixth Circuit stated:

> The purpose of background evidence is to put the charges in the
> appropriate context. It would be exceedingly difficult for witnesses
> to relay a story without referencing preceding or contemporaneous
> acts that are incidental but necessary to telling a cogent story, as it
> relates to the charges the defendant is facing. Thus, defendants are
> not entitled to a "sanitized" recounting of the facts, 23 C.J.S.
> *Criminal Law* § 1126, Westlaw (updated June 2015), and
> prosecutors are not restricted to proving only discrete elements of a
> crime in such a way that they would be unable to offer the jury a
> natural narrative of events, Christopher B. Muller and Laird C.
> Kirkpatrick, 1 Federal Evidence § 4:33, Westlaw (4th ed., updated
> June 2015). However, when the desired narrative implicates
> potential character evidence, which may be problematic under
> Rule 404(b), the doctrine may easily be abused. Muller and
> Kirkpatrick, *supra* § 4:33 ("In practice, [the] expanded idea of
> contextual relevance often paves the way to prove acts that are
> anything but inseparable from the charged crime, and this label can
> become a catchall for admitting acts that are far more prejudicial to
> the defendant than useful in determining guilt of the charged
> offense."). Therefore, courts must err on the side of caution and
> impose strict limitations on the admission of potential character
> evidence that is purportedly being introduced as "intrinsic" or
> "background" evidence but is not contemporaneous to the charged
> incident. The district court in this case abused its discretion by
> failing to keep in mind both the scope of the charges and the
> narrow purpose for which the *res gestae* exception exists.

*Id.* at 424-25.

Importantly, the Sixth Circuit noted that, had the defense questioned Godwin's credibility

on cross-examination by indicating that he failed to come forward to the police for nearly a

month after the August 28, 2013 shooting, then the door may have been opened to Godwin's

testimony regarding the reasons he did eventually speak honestly with the police—because

Godwin feared that the defendant was not finished retaliating after the defendant attempted to

kill him for a second time on September 21, 2013. *Id.* at 424. But, absent questions from the

defense that invited Godwin to testify that he initially failed to identify the defendant to police, the United States should not have done so on its own for the purpose of introducing a distinct, bad act unrelated to the charged offenses. *Id.*

In *Garrett v. United States*, 780 F.2d 1021, 1985 WL 13929 (6th Cir. Nov. 18, 1985) (unpublished opinion), the defendant appealed his jury conviction for the mailing of threatening communications with intent to extort.   The charge was based on the following facts:

> In May of 1983, Garrett reported to his insurance company, Prudential Property and Casualty Insurance (Prudential), damage to his home resulting from a hail storm.  During an inspection of the home by Prudential adjuster Charles Svalya (Svalya), Garrett threatened him with a gun and took his driver's license. He also told Svalya that he had threatened an agent named Kenneth Tesch (Tesch) who had previously denied another of his insurance claims.  Svalya did not file a complaint against Garrett.

> At the end of July, 1983, Svalya received an envelope at his home containing photographs, news clippings and writing of a threatening nature.  He also received a threatening telephone call on his answering machine from Garrett.

> Garrett was arrested by the FBI and despite his denial of possession of a firearm, he was found to possess a .30 caliber rifle. At the trial, the district court admitted testimony of other prior and subsequent criminal acts of Garrett.

*Id.* at *1.  The trial judge limited the evidence concerning the previous claim filed with Prudential to its denial prior to the filing of the instant claim, that Tesch had conducted the investigation of the claim, and that threatening telephone calls had been received by Tesch.  The Sixth Circuit found that these prior acts were not excluded by FRE 404(b) because they "formed an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted."   *Id.* (internal quotation marks and citation

32

omitted).   "In other words, intrinsic evidence 'necessary to provide coherence to the government's case' is not the type of 'other acts' contemplated by Rule 404(b)."  *Id*.  The Sixth Circuit concluded that, because the prior and subsequent acts were intrinsic to a complete understanding of the facts in the instant case, the trial court did not abuse his discretion is admitting the evidence.  *Id*.

The proffered evidence with respect to Jane Doe #4 (K.B.) is not exactly analogous to the evidence described in these two cases.  However, this situation as more akin to *Garrett* than *Gibbs*.  For one, the Court does not view the incident involving Jane Doe #4 (K.B.) as a distinct, alleged bad act unrelated to the alleged failure to report suspected child abuse with respect to Jane Doe #1, even though, as the United States admits, testimony and evidence regarding Jane Doe #4's complaints are not necessary to prove a violation of 18 U.S.C. § 2258.   As the Sixth Circuit stated in *Gibbs*, Smith is not entitled to a sanitized recounting of the facts and prosecutors are not restricted to proving only discrete element of a crime in such a way that they would be unable to offer the jury a natural narrative of events.   Furthermore, the Court believes that testimony and evidence of Jane Doe #4 (K.B.)'s complaints are intrinsic to a complete understanding of the facts in this case, like the evidence offered in *Garrett*.  Jane Doe #4 (K.B.)'s report was also documented along with Jane Doe #1's report in the incident report and both were brought to light during the August 2013 investigation.  And unlike the facts in *Gibbs*, Jane Doe #4 (K.B.)'s complaints appear to have a temporal connection with the charged offense and would constitute a continuing pattern of allegedly criminal activity by Miller.   Thus, the Court concludes that concludes that the proffered evidence is background or intrinsic evidence and therefore outside the scope of FRE 404(b).

As discussed next, even if the proffered evidence is not background or intrinsic evidence, it is admissible under FRE 404(b).

### 2.   Admissible for another purpose under FRE 404(b)(2)

The United States argues that, even if the Court does not find that the proffered evidence is inextricably intertwined with the charged offense, it should be admitted under FRE 404(b)(2) as a permitted use.  The United States argues that the purported evidence shows that Smith had knowledge that Miller inappropriately interacted with other female cadets, "which gives the more reason to suspect child abuse had occurred [to] Jane Doe #1."  (DN 120, p. 6.)

In ruling on the admissibility of evidence submitted under FRE 404(b), first the Court must make a preliminary determination regarding whether there is sufficient evidence that the "other acts" took place.  *United States v. Bell*, 516 F.3d 432, 441 (6th Cir. 2008); *see also Hardy*, 228 F.3d at 750 (observing that the party seeking to admit the 404(b) evidence must first demonstrate that the other bad acts occurred).  Second, the Court must then determine that the evidence is admissible for a proper purpose under Rule 404(b).  *Bell*, 516 F.3d at 441.  "To determine whether the proffered evidence is admissible for a proper purpose, the trial court must decide whether that evidence is probative of a material issue other than character."  *Id*. (internal citation and quotation marks omitted).  Third, the Court must decide whether the probative value of the evidence outweighs its potential prejudicial effects.  *Id*.; *see also United States v. Ismail*, 756 F.2d 1253, 1259 (6th Cir. 1985) ("Before admitting prior acts evidence, the district court must determine that the evidence is admissible for a proper purpose and that the probative value of the evidence outweighs its potential prejudicial effects.").  The prior acts generally must be relevant to the matter at issue and must be substantially similar, and near in time, to the offense

charged in the indictment.  *Id.*  "When admitting evidence under Rule 404(b), the court must carefully identify, in its instructions to the jury, the specific factor named in the rule that is relied upon to justify admission of the other-acts evidence, explain why that factor is material, and warn the jurors against using the evidence to draw the inferences expressly forbidden in the first sentence of Rule 404(b)."  *United States v. Everett*, 270 F.3d 986, 991-92 (6th Cir. 2001) (internal citation and quotation marks omitted).

First, the United States argues that the incident with respect to Jane Doe #4 (K.B.) is not in dispute as most of the evidence of this incident comes from Smith's own statements.  (*See* DN 120, p. 6.)  The Court finds that there is a sufficient evidence in the record that Jane Doe #4 (K.B.) made a complaint that Miller had inappropriate sexual contact with her in early February 2013 and that Smith learned of this complaint at approximately the same time that he learned of Jane Doe #1's complaint.

Second, the United States argues that it does not intend to present evidence to impermissibly attack Smith's *character*, but to prove that he had *knowledge* that Miller had inappropriately interacted with other female cadets, which gives more reason to suspect child abuse had occurred to Jane Doe #1.  Third, the United States argues that the evidence is not unfairly prejudicial and relates more to Miller's character than to Smith's character.  Finally, the United States asserts that a limiting instruction can mitigate any change of the jury reaching a verdict on an improper basis.

The Court agrees.  The proffered evidence does not appear to be offered to prove that Smith acted in conformity therewith.  That is, the proffered evidence does not appear to be offered to show that Smith failed to report another case of suspected child abuse. *See United*

35

*States v. Pennington*, No. CRIM. 12-06-GFVT, 2012 WL 1658717, at *2 (E.D. Ky. May 11, 2012) (stating that the list enumerated in Rule 404(b)(2) is not exhaustive and is instead "nothing more than a number of common uses of 'other acts' evidence, not a mandate to pigeonhole an attempted use into one of the enumerated uses.") (citing *United States v. Bakke,* 942 F.2d 977, 981 (6th Cir.1991)).   Rather, the evidence is relevant to show Smith's knowledge of Miller's behavior with respect to Jane Doe #1; knowledge of Jane Doe #4's (K.B.'s) complaint would give Smith more reason to believe that Jane Doe #1 had also suffered an incident of child abuse and that this was not a mistake or misinterpretation of Miller's actions on Jane Doe #1's part. The Court also finds that the probative value of the proffered evidence outweighs its possible prejudicial effect.   The complaint made by Jane Doe #4 (K.B.) is highly probative of whether Smith had knowledge or notice that Jane Doe #1 had suffered child abuse.   Moreover, it is necessary to a complete understanding of the facts underlying the criminal charge against Smith. The proffered evidence speaks more to Miller's character more than Smith's.

Finally, the Court is not convinced that the proffered evidence is "evidence of a crime, wrong, or other act" because it relates to bad acts by Miller, not necessarily Smith.   Fed. R. Evid. 404(b)(1).   *See Williams v. Bauman*, No. 2:12-CV-334, 2015 WL 5315783, at *12 (W.D. Mich. Sept. 11, 2015) ("Evidence is not subject to MRE 404(b) analysis merely because it discloses a bad act. If the other-acts evidence is 'in any way relevant to a fact in issue," and "does not involve the intermediate inference of character,' it is admissible as substantive evidence without regard to MRE 404(b).").   But because the United States has raised the issue and because it is conceivable that the proffered evidence could be used to subject Smith to another charge for a

violation of 18 U.S.C. § 2258, the Court believes that the issue warrants a FRE 404(b)(2) analysis.

For the foregoing reasons, the Court finds that the proffered evidence is admissible. Accordingly, DN 120 is GRANTED.

### C.  Smith's Motions in Limine

#### a.  Motion Regarding Testimony of Jane Doe #1 (DN 171)

In his first motion in limine, Smith moves the Court to limit the testimony of Jane Doe #1 to issues that are relevant to the one charge for which Smith is being prosecuted.  For example, Smith believes that the United States may elicit testimony from Jane Doe #1 about sexually suggestive comments that Miller made to her over the course of their relationship and that Jane Doe #1 was not allowed to talk to a counselor about the incident for many weeks after it occurred.   Smith argues that testimony like this is not relevant because the focus of this case is what Smith did or did not do in response to his knowledge; Smith asserts that there is no evidence that Smith was present when Miller made the alleged comments to Jane Doe #1, had knowledge that such statements were made, or had anything to do with Jane Doe #1 having access to a counselor after the incident at issue.  Smith further asserts that these are just a few examples of the areas that he is concerned about and requests that the United States be required to identify the testimony it plans to elicit from Jane Doe #1 before she testifies.

The United States vehemently opposes Smith's request that he be permitted preview Jane Doe #1's testimony before she testifies, stating that there is no law to support his request.  The United States further asserts that Smith has been provided with Jane Doe #1's grand jury transcript, recorded interviews of Jane Doe #1, and summaries of interviews with Jane Doe #1

37

which could have been used to file motions in limine to streamline trial.  In addition, the United States argues that the examples of evidence cited by Smith are, in fact, relevant.  First, the United States points out that one of the sexually suggestive comments made by Miller is listed in the February 12, 2013 incident report that Smith acknowledged receiving.[11]  Second, the United States argues that even the comments that Smith may not have known about and/or a delay in the investigation of the incident are admissible as necessary background evidence to provide context.  That is, the United States believes that, for the jury to understand what happened to Jane Doe #1 and how Smith was informed of what happened, Jane Doe #1 must necessarily talk about her experience with Miller and how the incident was investigated at BCA, including what her normal interactions with Miller were like and what procedure was used by staff to investigate the claim.  Finally, the United States argues that the evidence is not overly prejudicial.

Without having specific potential testimony to consider, the Court cannot make a conclusive decision here other than to find that testimony from Jane Doe #1 regarding Miller's comments and actions that caused her to make a report in February 2013, as well as what she actually reported, is relevant background information, even if some of the comments and actions were not described in the February 12, 2013 incident report or Smith had no knowledge of the comments or actions.  This is proper background evidence that has a causal and temporal connection with the charged offense.  *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000).  "Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense."  *Id*.  To have Jane Doe #1 testify

---

[11]     The United States does not point the Court to the portion of the incident report where the comment is listed.

regarding only acts by Miller of which Smith had knowledge could make her testimony regarding what she reported incoherent and incomplete.  Her testimony regarding what she experienced which led to her report Miller's actions in February 2013 is necessary to complete the jury's understanding of the facts underlying the basis of the charge against Smith.  Smith can cross-examine Jane Doe #1 regarding on what she experienced versus what she reported to the extent her testimony differs.

With respect to potential testimony from Jane Doe #1 regarding not being allowed to talk to a counselor about the incident until weeks after it occurred, the Court has carefully considered Smith's argument.  The Court is not prepared to find at this juncture that such testimony would be wholly irrelevant; however, Smith may make specific evidentiary arguments on that point at trial.

Finally, the Court finds that Smith is not entitled to a preview of Jane Doe #1's testimony.

Accordingly, Smith's first motion in limine (DN 171) is DENIED WITH PREJUDICE IN PART and DENIED WITHOUT PREJUDICE IN PART.

Smith's first motion in limine is DENIED WITH PREJUDICE insofar as it seeks a preview of Jane Doe #1's testimony.

At this juncture, Smith's first motion in limine is DENIED WITHOUT PREJUDICE insofar as it seeks to prohibit Jane Doe #1 from testifying regarding not being allowed to talk to a counselor about the incident until weeks after it occurred.  The Court will entertain specific evidentiary arguments on this issue at trial.

### b.  Motion Regarding Co-Defendant Miller's Conduct (DN 175)

In his second motion in limine, Smith moves the Court to limit evidence regarding Miller's conduct and the disposition of the charges in Miller's criminal case.  Smith argues that the presentation of any evidence regarding Miller's conduct, other than the conduct that is the basis of the charge against Smith, is not relevant; Smith also summarily states that the disposition of the criminal charges against Miller is not relevant.

The United States has filed a single response addressing Smith's second (DN 175) and fourth (DN 177) motions in limine as those motions are related.  The United States generally agrees that Miller's guilty plea with respect to Jane Doe #1, Jane Doe #2, Jane Doe #3, and Jane Doe #4 is not relevant and asserts that it does not plan to introduce evidence regarding this in its case in chief.  The United States argues, however, that the guilty plea might become relevant if Miller testifies and if Smith opens the door to evidence regarding Miller's guilty plea.  The United States also argues that Miller's conduct with respect to Jane Doe #1, Jane Doe #3, and Jane Doe #4 (K.B.) is relevant as set forth in its various motions.  The Court will not re-hash those arguments as they have been addressed in conjunction with other evidentiary rulings contained in this opinion and order.  The United States agrees that Miller's conduct with respect to Jane Doe #2 is not relevant.

Based on the foregoing, the Court finds that, at this juncture, evidence of Miller's acts and comments directed toward Jane Doe #2 are not relevant and therefore not admissible.  The Court further finds that evidence of Miller's guilty plea with respect to Jane Doe #1, Jane Doe #2, Jane Doe #3, and Jane Doe #4 (K.B.) is not admissible in the United States' case in chief.

The Court declines to specifically limit evidence regarding Miller's conduct in the confines suggested by Smith, that is, to such conduct that is the basis of the charge against Smith. The Court has found that (1) evidence regarding the August 2013 incident in the matter detailed by the United States in its fifth motion in limine (DN 133) is admissible; (2) evidence concerning a complaint made by Jane Doe #4 (K.B.) that Stephen Miller had inappropriate sexual contact with her in early February 2013 and evidence that Smith learned of this complaint at approximately the same time that he learned of the complaint made by Jane Doe #1 is admissible as detailed in the portion of this opinion addressing the Notice of Intent and Motion (DN 120); and (3) the February 12, 2013 incident report, addressed in the United States' ninth motion in limine (DN 170), is admissible.   To the extent that evidence of Miller's acts or comments with respect to Jane Doe #1, Jane Doe #3, and Jane Doe #4 fit within these categories, such evidence may be admissible at trial.  However, the Court cannot definitively find as much at this time; such issues are more appropriately considered as they arise at trial.

Accordingly, Smith's second motion in limine (DN 175) is GRANTED IN PART AND DENIED IN PART, subject to the following guidelines:

No party shall introduce evidence regarding Jane Doe #2.

The United States shall not introduce evidence in its case in chief related to the disposition of the criminal charges against Miller.  The Court will, however, entertain specific arguments on this issue at trial in relation to the evidence put on by Smith.

Smith's second motion in limine is DENIED insofar as it seeks to delineate a category of Miller's conduct that is the basis of the charge against Smith and to prohibit evidence and testimony that falls outside of such category.

41

### c.  Motion Regarding Disposition of Misdemeanor Defendants (DN 176)

In his third motion in limine (DN 176), Smith asks the Court to exclude evidence regarding the disposition of the criminal misdemeanor charges against his co-defendants.  Smith states that all other defendants charged in this case with violating 18 U.S.C. § 2258 have entered into pretrial diversion agreements with the United States.  He contends that the existence of misdemeanor charges against other individuals, as well as the dispositions of those charges, is irrelevant to this matter.

In its response, the United States states that it "agrees that whether other people were charged and how their cases were disposed of is not relevant to this case."  (DN 183 at 2.)  The United States represents that it does not plan to introduce such evidence during its case in chief, but argues that charges against Smith's co-defendants and the dispositions of such charges could become relevant if a co-defendant testifies at trial.  The United States further argues that Smith could open the door to such evidence.

The parties agree that the existence of misdemeanor charges against Smith's co-defendants and the disposition thereof are irrelevant to proving the single misdemeanor charge against Smith.  The Court concurs.

Accordingly, Smith's third motion in limine (DN 176) is GRANTED.  The United States shall not introduce evidence regarding the misdemeanor charges against other defendants or the disposition thereof in its case in chief.  The Court will, however, entertain arguments on this issue at trial in relation to the evidence put on by Smith.

### d. Motion Regarding Introduction of Evidence or Reference to Jane Does #2, #3, and #4 (DN 177)

In his fourth motion in limine, Smith moves the Court to limit the United States from eliciting testimony or presenting any evidence relating to any Jane Doe other than Jane Doe #1. Specifically, Smith argues that evidence related to Jane Doe #2, Jane Doe #3, and Jane Doe #4 (K.B.) is irrelevant.  This motion is intertwined with Smith's second motion in limine to limit testimony regarding Miller's conduct or the disposition of the charges in Miller's case (DN 175). The United States filed a single response to DN 175 and DN 177.  (*Id*.)  The Court will not repeat those arguments here.

For the reasons stated heretofore, (1) evidence regarding Jane Doe #2 is not relevant and therefore not admissible; and (2) evidence of Miller's acts or comments with respect to Jane Doe #1, Jane Doe #3, and Jane Doe #4 will be evaluated consistent with the Court's rulings in the instant memorandum opinion and order.

Accordingly, Smith's fourth motion in limine (DN 177) is GRANTED IN PART and DENIED IN PART.

This motion in limine is GRANTED insofar as it seeks to prohibit evidence regarding Jane Doe #2.

This motion in limine is DENIED insofar seeks to limit evidence regarding Jane Doe #1, Jane Doe #3, and Jane Doe #4.

43

## ORDER

Accordingly, IT IS HEREBY ORDERED AS FOLLOWS:

1. The United States' first motion in limine (**DN 129**) is **GRANTED**.  The mental state required by 18 U.S.C. § 2258 is knowledge of facts that give reason to suspect that a child has suffered an incident of child abuse.

2. **DN 196**, Smith's motion to overrule DN 129, is **DENIED**.

   a. The mental state required by 18 U.S.C. § 2258 is knowledge of facts that give reason to suspect that a child has suffered an incident of child abuse.  The Court declines to adopt Smith's proposed heightened *mens rea*, and arguments in favor of a heightened *mens rea* will not be permitted at trial.

   b. Insofar as DN 196 is intended to seek approval of Smith's proposed jury instructions, it is DENIED.  The Court will rule on the parties' proposed jury instructions (DN 209, 213) by separate order.

3. The United States' second motion in limine (**DN 130**) is **GRANTED IN PART** and **DENIED IN PART**.

   a. DN 130 is GRANTED as it relates to the provision of training.  The training requirement set forth in 42 U.S.C. § 13031(h) is a not prerequisite to criminal liability under 18 U.S.C. § 2258, and arguments to the contrary will not be permitted at trial.

   b. DN 130 is GRANTED as it relates to purported failure by the Attorney General of the United States to designate an agency to which reports of suspected child abuse must be made.

44

    **c.** DN 130 is DENIED WITHOUT PREJUDICE as it relates to a failure to disseminate reporting forms.

**4.** The United States' third motion in limine (**DN 131**) is **GRANTED**.  Arguments and evidence regarding selective prosecution will not be permitted at trial.

**5.** The United States' fourth motion in limine (**DN 132**) is **DENIED WITHOUT PREJUDICE.**  Specific evidentiary objections related to Jane Doe #1's evaluation sheet will be considered at trial.

**6.** The United States' fifth motion in limine (**DN 133**) is **GRANTED**.

**7.** The United States' sixth motion in limine (**DN 134**) is **DENIED**.  Specific evidentiary objections will be considered at trial.

**8.** The United States' seventh motion in limine (**DN 135**) is **DENIED**.  Specific evidentiary objections will be considered at trial.

**9.** The United States' ninth motion in limine (**DN 170**) is **GRANTED**.

**10.** The United States' notice of intent to introduce and motion to admit evidence of other acts (**DN 120**) is **GRANTED**.

**11.** Smith's first motion in limine (**DN 171**) is **DENIED WITH PREJUDICE IN PART** and **DENIED WITHOUT PREJUDICE IN PART**.

    **a.** DN 171 is DENIED WITH PREJUDICE insofar as it seeks a preview of Jane Doe #1's testimony.

    **b.** DN 171 is DENIED WITHOUT PREJUDICE insofar as it seeks to prohibit Jane Doe #1's testimony regarding not being allowed to talk to a counselor about the

incident until weeks after it occurred.  The Court will entertain specific arguments on this issue at trial.

12. Smith's second motion in limine (**DN 175**) is **GRANTED IN PART** and **DENIED IN PART**.

   a. DN 175 is GRANTED insofar as it requests that no party be permitted to introduce evidence regarding Jane Doe #2.

   b. DN 175 is GRANTED insofar as the United States shall not, in its case in chief, be permitted to introduce evidence regarding the disposition of the criminal charges against Miller.  The Court will, however, entertain specific arguments on this issue at trial in relation to the evidence put on by Smith.

   c. DN 175 is DENIED insofar as it requests that the Court delineate a category of Miller's conduct that is the basis of the charge against Smith and to prohibit evidence and testimony that falls outside of such category.

13. Smith's third motion in limine (**DN 176**) is **GRANTED**.  The United States shall not introduce evidence regarding the misdemeanor charges against the other defendants or the disposition thereof in its case in chief.  The Court will, however, entertain specific arguments on this issue at trial in relation to the evidence put on by Smith.

14. Smith's fourth motion in limine (**DN 177**) is **GRANTED IN PART** and **DENIED IN PART**.

   a. DN 177 is GRANTED insofar as it requests that no party be permitted to introduce evidence regarding Jane Doe #2.

46

**b.** DN 177 is DENIED insofar as it seeks to limit evidence regarding Jane Doe #1, Jane Doe #3, and Jane Doe #4 in such a manner that would be inconsistent with the Court's rulings in the instant memorandum opinion and order.

15. Finally, the parties are cautioned to approach the bench prior to attempting to elicit testimony or introduce evidence that the court has provisionally prohibited in the instant memorandum opinion and order.

cc:  Counsel of record